# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>HUGO LEYVA-MARTINEZ,<br><br>　　　　　Defendant. | 8:16CR13<br><br>FINDINGS AND RECOMMENDATION |

This matter is before the court on the Motion to Suppress Evidence & Statements by Hugo Leyva-Martinez (Leyva-Martinez) (Filing No. 38). Leyva-Martinez is charged in the Superseding Indictment with a conspiracy from February 1, 2015, to December 7, 2015, to distribute and possess with intent to distribute methamphetamine (Count I) in violation of 21 U.S.C. § 846; the December 11, 2015, possession of methamphetamine with intent to distribute (Count II) in violation of 21 U.S.C. § 841(a)(1); the December 7, 2015, possession of firearms while being an illegal alien (Count III); and a Forfeiture Allegation regarding currency, a vehicle, and numerous firearms (Count IV). **See** Filing No. 32. Leyva-Martinez seeks to suppress evidence obtained as a result of December 7, 2015, search warrants for a storage facility and a residence; a December 7, 2015, traffic stop in Omaha, Nebraska; and an interrogation of Leyva-Martinez on December 7, 2015.

The court held an evidentiary hearing on the motion on March 22, 2016. Leyva-Martinez was present with his counsel, Stuart J. Dornan. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. The court heard the testimony of Bellevue Police Department (BPD) Officer Robert Iske (Officer Iske), Special Bureau of Alcohol, Tobacco and Firearms (ATF) Agent Clay Nolte (Agent Nolte), and Omaha Police Department (OPD) Officer Paul James Milone (Officer Milone). The court also received into evidence the following: an Affidavit and Application for issuance of a Search Warrant for storage Unit 809 at Lockbox Storage, Omaha, Nebraska (Exhibits A and A-1); a Search Warrant for storage Unit 809 (Exhibit B); an Affidavit and Application for issuance of a Search Warrant for 332 South 154th Street, Omaha, Nebraska (Exhibit C); a Search Warrant for 332 South 154th Street, Omaha, Nebraska (Exhibit D); a Rights

Advisory Form (Exhibit E); and an OPD Supplemental Report (Exhibit 101). A transcript (TR.) of the hearing was prepared and filed on March 29, 2016 (Filing No. 51).

**FINDINGS OF FACT**

During the summer of 2015, the OPD Narcotics Unit was investigating the activities of Leyva-Martinez in Omaha, Nebraska (TR. 40). Officer Milone conducted three controlled buys of methamphetamine from Leyva-Martinez during November and December, 2015 (TR. 44). A court-ordered tracker device was placed on Leyva-Martinez's black Ford F-250 pickup in November 2015 (TR. 48). The tracker device indicated the Ford F-250 was at a storage facility located at 9815 Redick Avenue, in Omaha, Nebraska, at 6:35 on the morning of December 7, 2015 (TR. 48; Exhibit A-1). Officer Milone went to the storage facility and made contact with the manager of the facility (TR. 49). With the manager's assistance by accessing security camera footage and key code access, Officer Milone was able to determine the Ford F-250 pickup visited Unit 809 (TR. 49). Officer Milone requested OPD Sergeant Morley to bring his police canine to sniff the area of Unit 809 (TR. 49). The canine was employed and gave a positive indication for narcotics at Unit 809 (TR. 50). OPD officers maintained security of the unit while Officer Milone drafted an application for a search warrant of Unit 809 (TR. 50; Exhibit A-1). A warrant was issued and executed (TR. 50). Unit 809 contained nine pounds of methamphetamine ice, twelve firearms, and venue items linked to Leyva-Martinez (TR. 50). Officer Milone then requested surveillance of Leyva-Martinez at his residence, 332 South 154th Street, in Omaha (TR. 51). OPD Officer Miavage established surveillance of 332 South 154th Street around 2 p.m. on December 7, 2015 (TR. 52). After finding the items in Unit 809, Officer Milone returned to his office and began drafting a search warrant for Leyva-Martinez's residence at 332 South 154th Street (TR. 52). Officer Milone intentioned to arrest Leyva-Martinez and gave directions to Officer Miavage to utilize a uniform OPD officer in a marked cruiser to pull Leyva-Martinez over and arrest Leyva-Martinez if Leyva-Martinez left the residence at 332 South 154th Street (TR. 52). Officer Milone prepared an application and affidavit for a search warrant for 332 South 154th Street and was presenting it to a Douglas County

Judge when he was informed Leyva-Martinez had been traffic-stopped and detained (TR. 53). The warrant was signed and Officer Milone took the warrant to 332 South 154th Street (TR. 53).

On December 7, 2015, Officer Iske was in an OPD uniform and driving a marked cruiser (TR. 5-6). Receiving instructions to pull over a vehicle when so directed, Officer Iske parked his cruiser in the Wycliffe Apartments parking lot awaiting further instructions (TR. 7). Officer Iske observed a black Ford F-250 approaching the intersection where Officer Iske was waiting (TR. 8). Officer Iske received instruction to traffic-stop the Ford F-250, which he did (TR. 9). Following Officer Iske was another marked cruiser and undercover police cars (TR. 9). The Ford F-250 pulled over and Officer Iske had Leyva-Martinez step out of the Ford F-250 police (TR. 10). Leyva-Martinez was handcuffed and placed in Officer Iske's vehicle (TR. 10). Also in the Ford F-250 was a seven-year old child who was turned over to one of the detectives (TR. 20). The Ford F-250 and police vehicles drove to the nearby Lifegate Church parking lot and parked (TR. 10-11). Officer Iske waited for a tow truck for the Ford F-250 with Leyva-Martinez in the back seat (TR. 12). At some point the Ford F-250 was searched and a pound of methamphetamine was found in the Ford F-250 (TR. 33; 55). After the tow truck arrived at the Lifegate Church parking lot and secured the Ford F-250, Officer Iske drove to 332 South 154th Street and parked on the east side of the residence (TR. 11). While waiting in the back of Officer Iske's cruiser, Leyva-Martinez talked about his children with Officer Iske but was not questioned about the case by Officer Iske (TR. 14).

Officer Milone took the signed search warrant to the residence at 332 South 154th Street and assisted in the search of the residence (TR. 55). When informed Leyva-Martinez arrived at the residence in the back of a police cruiser, Officer Milone walked outside and got into the back of the police cruiser with Leyva-Martinez (TR. 56). Officer Milone advised Leyva-Martinez of his *Miranda* rights using PO Form 17 (TR. 56; Exhibit E). After Officer Milone advised Leyva-Martinez of each right, Officer Milone wrote Leyva-Martinez's response next to each question (TR. 57; Exhibit E). The entire conversation with Leyva-Martinez was in the English language (TR. 57). After being advised of his rights, Leyva-Martinez stated: "All this is mine, she has nothing to do with

3

it.  I want to talk, but I also might want to talk to a lawyer.  I don't want to be recorded.  What you found in the storage unit by WalMart is all I had" (Exhibit E).   Officer Milone wrote Leyva-Martniez's statement on the form (TR. 61; Exhibit E).   Since it was getting warm in the back of the cruiser, Leyva-Martinez asked for a drink and both Officer Milone and Leyva-Martinez got out of the cruiser (TR. 62).   Officer Milone asked for Leyva-Martinez to cooperate with the investigation and Leyva-Martinez said he would help if they left him out of jail (TR. 63).   Officer Milone told Leyva-Martinez that given the investigation so far, there was nothing he could do about keeping him out of jail (TR. 63).  Officer Milone went into the house to get Leyva-Martinez a drink and talk to Officer Milone's sergeant, Dave Bianchi (TR. 64).   Officer Milone returned outside and spoke to Leyva-Martinez (TR. 64).  Because of documents found in Unit 809 and keys found during the search of the residence, Leyva-Martinez was asked about other storage units (TR. 65-66).   Leyva-Martinez continued to converse with the officers and said he would show them other storage units involved in the investigation (TR. 64-67).   Leyva-Martinez accompanied law enforcement officers when traveling to various storage units in the Omaha area, following which Leyva-Martinez was booked into Douglas County Corrections (TR. 66).   Officer Milone was never made aware that Leyva-Martinez ever asked for an attorney during the entire time Officer Milone or other law enforcement officers were with Leyva-Martinez (TR. 68).

Agent Nolte arrived at 332 South 154th Street and participated in the search of the residence (TR. 25).   While searching, Agent Nolte was informed by Officer Milone that Leyva-Martinez was going to show officers other storage units involved (TR. 26).   While waiting in the cruiser, Leyva-Martinez asked to get out of the cruiser as his legs were cramping up (TR. 14).   Officer Iske assisted Leyva-Martinez to get out of the cruiser and stand up (TR. 15).   Leyva-Martinez was still handcuffed behind his back (TR. 15).  Agent Nolte went outside and made contact with Leyva-Martinez, who was standing outside next to a police cruiser (TR. 26).   While standing near Leyva-Martinez, Leyva-Martinez stated in English to Agent Nolte that he was not lying (TR. 26).   Agent Nolte told Leyva-Martinez that he didn't ask Leyva-Martinez any questions and Agent Nolte did not know what Leyva-Martinez was talking about (TR. 26).   Leyva-Martinez

4

said the guns in the storage unit were his, that he purchased them from some kids because he knew they were stolen, and he had told his lawyer about it four to six months ago (TR. 26). Leyva-Martinez told Agent Nolte his lawyer was supposed to put him in contact with someone in the OPD so he could give OPD the guns (TR. 24). Agent Nolte told Leyva-Martinez his lawyer did not do that (TR. 26). Leyva-Martinez continued to say he was not lying (TR. 27). Agent Nolte heard no officer ask Leyva-Martinez any questions and Leyva-Martinez was calm and spoke English during this time (TR. 27). Agent Nolte then accompanied Leyva-Martinez and other law enforcement officers while Leyva-Martinez pointed out various storage units in the area (TR. 32).

### Search of Storage Unit 809

Leyva-Martinez asserts there was insufficient probable cause for the issuance of the search warrant for Unit 809. After several controlled purchases of methamphetamine from Leyva-Martinez and after Leyva-Martinez's Ford F-250 was tracked to the storage units at 9815 Redick Avenue, in Omaha, Nebraska, Officer Milone drove to the storage facility. Officer Milone spoke with the manager and used information found on storage facility cameras and access equipment to determine the Ford F-250's driver accessed Storage Unit 809. The manager also identified Leyva-Martinez's photograph as a person who accessed Unit 809 in the past. A state certified drug detection canine, Pippin, gave a positive indication for narcotics at the door of Unit 809. Officer Milone set forth these details in his affidavit for a search warrant of Unit 809 (Exhibit A-1).

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, ***Search & Seizure*** § 3.7(d) at 412 (4th ed. 2004). When reviewing the sufficiency of an affidavit "[a] totality of the circumstances test is used to determine whether probable cause exists. Courts should apply a common sense approach and, considering all relevant circumstances, determine whether probable cause exists." ***United States v. Hager***, 710 F.3d 830, 836 (8th Cir. 2013). "Probable cause is established when there is a fair probability that the object of the search warrant may be found in the place to be searched." ***United States v.***

*Romo-Corrales*, 592 F.3d 915, 919 (8th Cir. 2010) (internal quotation omitted). As the Supreme Court stated in *Illinois v. Gates*:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Reviewing the affidavit for the search warrant for Storage Unit 809, I find there is sufficient probable cause for the issuance of the search warrant and Leyva-Martinez's motion to suppress on such basis is without merit.

### Stop and Search of Leyva-Martinez's Vehicle

Leyva-Martinez asserts there was insufficient probable cause to stop and search his vehicle. Leyva-Martinez was driving the Ford F-250 which had been observed driving to Storage Unit 809 where methamphetamine and guns were found and which Leyva-Martinez was observed driving during the investigation. There had been controlled purchases of methamphetamine directly from Leyva-Martinez. Officer Milone and other OPD officers had sufficient probable cause to stop the Ford F-250 and make a warrantless arrest of Leyva-Martinez.

The Fourth Amendment requires an arrest be made with a valid arrest warrant or that a warrantless arrest be supported by probable cause. **See** U.S. Const. amend. IV.; *Royster v. Nichols*, 698 F.3d 681, 687 (8th Cir. 2012). "A warrantless arrest by law enforcement is reasonable where there is probable cause to believe that someone has committed or is committing a crime." *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013); **see also** *Florida v. White*, 526 U.S. 559, 565 (1999) ("The Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred."). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an

objectively reasonable police officer, amount to probable cause." *Id.* (citation omitted); see also *United States v. Smith*, 715 F.3d 1110, 1115 (8th Cir. 2013); *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010); *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008) (using a totality of the circumstances standard); *United States v. Morgan*, 997 F.2d 433, 435 (8th Cir. 1993) (noting court may consider collective knowledge).

There was sufficient probable cause for a stop and an arrest of Leyva-Martinez. His motion to suppress on that basis should be denied.

The search of the Ford F-250 is another matter. The government failed to elicit testimony as to how or why the Ford F-250 was searched. It is unknown who found a pound of methamphetamine in the Ford F-250. **See** TR. 33, 55; Exhibit 101. The Ford F-250 was towed from the church parking lot after the occupants were removed from the vehicle. The government did not produce testimony to clarify whether the search was incident to arrest, a search under the automobile exception, or an inventory search. The government alluded to an inventory search during argument (TR. 94).

"Inventory searches are one exception to the general rule that searches conducted without a warrant are unreasonable." *Smith*, 715 F.3d at 1117. "Law enforcement officers may conduct a warrantless search and inventory in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger." *United States v. Beal*, 430 F.3d 950, 954 (8th Cir. 2005); see also *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). "An inventory search must be reasonable under the totality of the circumstances . . . and may not be a ruse for general rummaging in order to discover incriminating evidence." *Smith*, 715 F.3d at 1117 (citation omitted). "The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime." *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (internal quotation marks omitted). No such testimony of standardized police procedures was introduced. Given the tenor of circumstances at the church parking lot, it appears the seizure of the pound of methamphetamine was a search to

7

discover evidence without a warrant. The seizure of the pound of methamphetamine seized from the Ford F-250 should be suppressed from evidence.

## Search of 332 South 154th Street

Following the search of storage Unit 809, Officer Milone prepared an affidavit to support an application to search 332 South 154th Street. Leyva-Martinez asserts there was insufficient probable cause to issue the warrant. A plain reading of Officer Milone's affidavit (Exhibit C) establishes there is a fair probability that contraband or evidence of a crime would be found at 332 South 154th Street. *Gates*, 462 U.S. at 238. Leyva-Martinez's motion to suppress on this basis should be denied.

## Leyva-Martinez's Statements
### A. Voluntariness

Leyva-Martinez asserts statements he made were not knowingly and voluntarily made since he didn't speak or understand English. This assertion is wholly without merit. From the time of the traffic stop until he was booked into Douglas County Corrections, the various officers who had contact with Leyva-Martinez conversed with him in English. There was no testimony that there was any difficulty in conversing with Leyva-Martinez in English. There was no evidence by the defendant that he did not understand what the officers were saying. All of the transactions were in English and Leyva-Martinez's assertion of a lack of comprehension is wholly without merit.

### B. *Miranda* Rights

Before questioning begins, a suspect in custody must be informed of the following: (1) he has the right to remain silent; (2) his statements may be used against him in a court of law; (3) he has the right to an attorney; and (4) if he cannot afford an attorney, one will be appointed. *Miranda v. Arizona*, 384 U.S. 436, 444, 469-70, 478-79 (1966). There is no question, Leyva-Martinez was in custody from the time he was traffic-stopped by Officer Iske. There was no questioning of Leyva-Martinez until Officer Milone came out of the residence being searched and approached Leyva-Martinez at the

police cruiser.  There, Officer Milone read Leyva-Martinez his *Miranda* rights in English and recorded Leyva-Martinez's responses on Exhibit E.  No evidence exists Leyva-Martinez did not understand English and his rights.   In fact, Leyva-Martinez stated he understood the rights and wanted to talk with Officer Milone.  Leyva-Martinez stated he "might want to talk with a lawyer" but never requested a lawyer during the initial conversation with Officer Milone or any subsequent conversations with law enforcement officers that day.

Leyva-Martinez asserts he requested an attorney, questioning should have ceased, and any subsequent statements by Leyva-Martinez should be suppressed.  If an individual in custody invokes his right to talk to or have an attorney present during questioning, the questioning must cease until an attorney is present.  *Miranda*, 384 U.S. at 473-74.  However, to adequately invoke this right, the individual must indicate a clear, consistent expression that he does want to proceed without consulting an attorney or having an attorney present for the questioning.  *United States v. Johnson*, 56 F.3d 947 (8th Cir. 1995).  The court considers the defendant's statements as a whole to determine whether there is an unequivocal request for an attorney.  **See** *United States v. Thompson*, 56 F.3d 947, 955 (8th Cir. 1955).  Leyva-Martinez's statement that he might want to talk with a lawyer was ambiguous and did not require the questioning to cease.  *United States v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013).  Furthermore, Leyva-Martinez continued to talk with the officers at various times during the day and did not request to talk with an attorney or have an attorney present.  A waiver of rights can be inferred from the actions and words of the person questioned.  *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); **see also** *United States v. Adams*, No. 14-3339, 2016 WL 1399354, at *3 (8th Cir. Apr. 11, 2016).

Accordingly, Leyva-Martinez's motion to suppress should be denied except for the one pound of methamphetamine found in the Ford F-250 before being towed from the church parking lot.

**IT IS RECOMMENDED** to the Honorable Joseph F. Bataillon, United States Senior District Judge, that the Motion to Suppress Evidence & Statements (Filing No. 38)

be granted as to the one pound of methamphetamine seized from the Ford F-250 but denied in all other aspects.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to the Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of the Findings and Recommendation set forth above. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 29th day of April, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge